UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/25/2022__
```

ENVIRONMENT SOLUTIONS ASSOCIATES
GROUP, LLC,

                              Plaintiff,

              -against-

CONOPCO, INC., d/b/a Unilever,

                              Defendant.

1:20-cv-10699 (MKV)

**OPINION AND ORDER
DENYING MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Environment Solutions Associates Group, LLC ("ESG" or "Plaintiff") brings this breach of contract action against Defendant Conopco, Inc. d/b/a Unilever ("Unilever" or "Defendant"), alleging that Unilever violated the confidentiality provisions of a services contract and misappropriated Plaintiff's confidential information and intellectual property. (Second Amended Complaint ("SAC") [ECF No. 31]). Having carefully considered the parties' submissions and arguments, the Court denies Defendant's motion.

## BACKGROUND

### I.  Procedural History

ESG commenced this action for breach of contract with the filing of its original Complaint. [ECF No. 1]. The Court thereafter granted Plaintiff leave to file an Amended Complaint to correct a typographical error in the case caption. [ECF No. 8].

Subsequently, with leave of Court, Defendant filed a Motion to Dismiss the Amended Complaint. [ECF No. 19]. In response, Plaintiff cross-moved for leave to amend. [ECF No. 23]. The Court granted Plaintiff's cross-motion and denied Defendant's motion as moot. [ECF No. 29]. The Court admonished Plaintiff that, by reason of Defendant's Motion to Dismiss, it

was on notice of the alleged deficiencies in its pleading and that the Court would be reluctant to grant further leave to amend if Defendant successfully moved to dismiss the Second Amended Complaint.  [ECF No. 29].

Plaintiff thereafter filed a Second Amended Complaint, which asserted a cause of action for breach of contract (*i.e.* the Agreement).  (SAC ¶¶ 29–37).  Defendant has moved to dismiss Plaintiff's SAC.  [ECF No. 37].  In support of its motion, Defendant filed a memorandum of law, (Def. Br. [ECF No. 38]) and the declaration of Sarah Peyronnel, counsel for Defendant, which attached several exhibits, (Peyronnel Decl. [ECF No. 39]).  Plaintiff has filed a memorandum of law in opposition to Defendant's motion.  (Pl. Opp'n [ECF No. 40]).  Defendant has filed a reply memorandum of law.  (Def. Reply [ECF No. 41]).

## II.   Factual Background

ESG is the developer of the Ecopod kiosk, a smart-tech refill system that dispenses home care and personal care products into reusable containers.  (SAC ¶ 1).[1]  Ecopod kiosks contain a proprietary peristaltic pump system that is used to dispense viscous substances (*i.e.* shampoo, conditioner, and body wash) and a novel system that registers remotely whether a product in the kiosk requires refilling.  (SAC ¶ 8).

On February 12, 2019, ESG entered into a Services Agreement (the "Agreement") with Unilever, a producer and provider of personal care products such as perfumes, soaps, and shampoos.  (SAC ¶¶ 3, 12; *see also* SAC Ex. A (the "Agreement")).  Under the terms of the Agreement, Unilever leased the "'ecopod' dispensing system for Unilever's home and personal care products . . . to be installed and used at Unilever facilities in [New Jersey] by Unilever's employees."  (SAC ¶ 12; Agreement, Clause 1.1).  Pursuant to the Agreement, ESG delivered

---

[1] The facts are taken from the operative SAC, and are accepted as true for the purposes of this motion.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

and leased the Ecopod equipment and associated bulk containers to Unilever, provided face-to-face training to Unilever's personnel, and provided service and remote technical support for the Ecopod equipment.  (SAC ¶ 12; Agreement, Clause 1.1).  The stated purpose for the Agreement was for Unilever to review the possibility of using Ecopod for its own product sales.  (SAC ¶ 12; Agreement, Clause 1.1).

Under the Agreement, the parties were required to keep all product and service information, business information, and transaction information that was received by the other party (hereinafter referred to as "Confidential Information") confidential and only to use that information in connection with the Agreement.   (SAC ¶ 13; Agreement § 7.2).  This restriction did not apply to information independently obtained or to public information.  (Agreement § 7.1).  At the termination of the Agreement, the parties were required to return the other party's Confidential Information.  (SAC ¶ 13; Agreement § 7.3).

The Agreement also provides that any intellectual property existing before the Agreement commenced or created independently from the Agreement (hereinafter referred to as "Background IP") could be used by the other party "only for the performance and receipt of the Services [outlined in the Agreement], unless agreed in a separate written agreement that other rights of use apply."  (SAC ¶ 14; Agreement § 6.1).  Any intellectual property created through performance of the Agreement (hereinafter referred to as "Arising IP") would belong to Unilever and could only be used by ESG "for the performance of the Services [outlined in the Agreement]."  (Agreement § 6.1).  The Agreement also provides that its expiration or termination "does not affect any clause expressed or which should reasonably be construed to survive expiry of termination, including its confidentiality provisions."  (SAC ¶ 15; Agreement ¶ 8.5).

3

Believing that Unilever was interested in expanding its business relationship with ESG, ESG configured the design and technical specifications of the Ecopod kiosk to dispense Unilever's products, within Unilever's hygiene and safety requirements, and shared this confidential information and know-how with Unilever.  (SAC ¶ 24).  ESG also provided Unilever with unfettered access to its Ecopod technology in performance of its obligations under the Agreement.  (SAC ¶ 25).  Specifically, Unilever's employees were permitted to examine ESG's machinery, and ESG freely shared its confidential know-how regarding Ecopod with Unilever, including Unilever engineers in Europe, on the belief that it was fully protected by the Agreement.  (SAC ¶¶ 23, 25).

About a year and a half after executing the Agreement, in October 2020, ESG learned that Unilever was planning a rollout in the United Kingdom of refilling stations that are, as it alleges, nearly identical to ESG's Ecopod kiosks.  (SAC ¶ 22).  ESG alleges, on information and belief, that Unilever used its Confidential Information and intellectual property in connection with Unilever's project in the United Kingdom.  (SAC ¶ 34).  After ESG became aware of these allegedly infringing refilling stations, ESG's principal, Henry Pino, reached out to Unilever's CEO, Alan Jope, to discuss his concern that Unilever had misappropriated ESG's Confidential Information and intellectual property in violation of the Agreement.  (SAC ¶ 26).  Mr. Jope informed Mr. Pino that Unilever would never violate an agreement or intellectual property rights. (SAC ¶ 26).  Soon thereafter, on November 27, 2020, Unilever's counsel sent a letter to ESG's counsel ending the business relationship between the parties.  (SAC ¶ 28).

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alterations, internal quotation marks, and citations omitted).

When determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes, the Court must limit its consideration to the factual allegations in the complaint, "which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## DISCUSSION

ESG has sufficiently alleged that Unilever misappropriated its Confidential Information and intellectual property.  The SAC alleges that Unilever breached the Agreement when it misappropriated for use in Unilever's own refillable kiosk project in the United Kingdom information that ESG had shared during the performance of the Agreement.  (SAC ¶¶ 32–34). ESG describes the allegedly misappropriated information as follows: (1) a peristaltic pump system used in the Ecopod kiosk to dispense viscous substances like shampoo, conditioner, and body wash; (2) a system that registers remotely whether a product in the Ecopod kiosk requires

refilling; and (3) the processes and know-how used by ESG to dispense viscous substances and to determine when products needed to be refilled in the Ecopod kiosks.  (SAC ¶¶ 1, 8–9).  ESG also alleges that it "configured the design and technical specifications of the Ecopod kiosk to dispense Unilever's products, within Unilever's hygiene and safety requirements, and shared this confidential information and know-how with Unilever."  (SAC ¶ 24).

In evaluating Plaintiff's claims, the Court has considered the Agreement between the parties, which is attached as an exhibit to the Second Amended Complaint.  *See Chambers*, 282 F.3d at 153 ("on a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference" so long as "a plaintiff[ ] reli[ed] on the terms and effect of a document in drafting the complaint").  Plaintiff alleges that the peristaltic pump system, the refill sensor system, and ESG's processes and know-how were all information that would constitute Background IP under the terms of the Agreement.  (*See* SAC ¶¶ 8–11; Agreement § 6.1 (defining "Background IP" as IP that existed prior to the commencement of the Agreement)).  Under section 6.1 of the Agreement, this Background IP remained the property of ESG after the execution of the Agreement.  (Agreement § 6.1).  Unilever was permitted to use ESG's Background IP "only for the performance and receipt of the Services [outlined in the Agreement], unless agreed in a separate written agreement that other rights of use apply." (Agreement § 6.1).

ESG alleges that, prior to the execution of the Agreement, it had developed the Ecopod kiosk, which contained the proprietary peristaltic pump system and refill sensor system (SAC ¶ 8), that during the execution of the Agreement, it provided Unilever with unfettered access to its Ecopod technology (SAC ¶¶ 23, 25), and that, after a year and a half of working together, Unilever began using in the United Kingdom its own refilling stations that were nearly identical

to ESG's Ecopod kiosks.  (SAC ¶ 22).  ESG alleges, on information and belief, that Unilever used ESG's Confidential Information and intellectual property in connection with its project in the United Kingdom.  (SAC ¶ 34).  Taken together, and drawing all reasonable inferences in Plaintiff's favor, ESG has sufficiently alleged that Unilever breached the agreement by misappropriating ESG's intellectual property.

Unilever predicates its Motion to Dismiss on a contention that these allegations fall short of the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure because, it asserts, ESG does not provide an adequate description of the intellectual property that is alleged to have been misappropriated.  (Def. Br. 16).  The Court finds that ESG has clearly satisfied Rule 8.  Rule 8 requires a "short and plain statement" of a plaintiff's claim in order to "give the adverse party fair notice of the claim asserted so as to enable [it] to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 41–42 (2d Cir. 1988); *see also Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) ("The key to Rule 8(a)'s requirements is whether adequate notice is given." (citation omitted)).  To satisfy Rule 8, ESG need only provide facts sufficient to allow Unilever to have a fair understanding of what ESG is complaining about and to know whether there is a legal basis for recovery.  *See Twombly v. Bell*, 425 F.3d 99, 106 (2d Cir. 2005) (defining "fair notice" as "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial") (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  Generally, only a complaint that is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised" fails to satisfy Rule 8(a)(2).  *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003); *Simmons*, 49 F.3d at 86 (holding the same).

Here, ESG alleges that Unilever misappropriated its intellectual property in violation of the Agreement when it installed refill kiosks in the United Kingdom that were allegedly identical to ESG's Ecopod kiosk. (SAC ¶¶ 22, 34). The allegations here are relatively straightforward and are not "confused, ambiguous, vague, or otherwise unintelligible." *Strunk*, 68 F. App'x at 235. Accordingly, ESG has sufficiently alleged that Unilever breached the Agreement by misappropriating information about ESG's peristaltic pump system, refill sensor system, and ESG's processes and know-how in implementing these systems.

Unilever also contends that, even if it had misappropriated this information, it did not constitute "Confidential Information" under section 6.1 of the Agreement. (Def. Br. 5). Specifically, Defendant contends that the purported confidential information at issue here was disclosed in U.S. Patent No. 9,440,842 (the "'842 Patent"), which was issued to Henry Pino, one of ESG's principals (SAC ¶ 4), three years prior the effective date of the Agreement. (*See* Peyronnel Decl. Ex. 3).[2] However, "where 'elements of the trade secret go beyond what was disclosed' in the patent application[,]" a party is entitled to trade secret protection. *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 518 (S.D.N.Y. 2017); *accord Injection Rsch. Specialists, Inc. v. Polaris Indus., L.P.*, 168 F.3d 1320 (Fed. Cir. 1998) ("[T]he issuance of a patent does not defeat a trade secret claim directed to matters not disclosed in the patent."). Although the '842 Patent generally disclosed a "cleaning product dispensing machine" containing a pump system and the ability to remotely register whether a product requires refilling, ESG alleges that it's Confidential Information included its know-how and knowledge in specifically configuring the design and technical specifications of the Ecopod kiosk to dispense

---

[2] In considering a motion to dismiss, the Court "may properly take judicial notice of official records of the United States Patent and Trademark Office and the United States Copyright Office." *Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010); *see also Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (taking judicial notice of federal copyright registrations).

Unilever's products, within Unilever's hygiene and safety requirement.  (SAC ¶ 24).  At this stage, drawing all reasonable inferences in favor of Plaintiff, ESG's allegations are sufficient to state a claim for relief.

ESG also sufficiently alleges that Unilever misappropriated Confidential Information regarding ESG's configuration of the Ecopod kiosk to dispense Unilever's products within Unilever's hygiene and safety requirements.  (SAC ¶ 24).  In moving to dismiss, Unilever argues that it could not have misappropriated this Confidential Information because any such information would constitute Arising IP, which Unilever owned under the terms of the Agreement.  (Def. Reply 8–9; Agreement § 6.1).[3]  However, in addition to stating that Unilever owned any IP created during the execution of the Agreement (*see* Agreement § 6.1), the Agreement also separately stated that all "Confidential Information" received from the other party could only be used in fulfillment of the Agreement (*see* Agreement § 7.2).  In light of Plaintiff's allegations and the parties contentions regarding potentially conflicting language in the Agreement, Plaintiff has sufficiently stated a claim that Defendant plausibly is liable for breach of contract.

Where a contract's language is clear and unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss.  *See, e.g.*, *Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC*, 300 F. App'x 48, 49 (2d Cir. 2008).  However, "when the language of a

---

[3] In the Second Amended Complaint, Plaintiff alleges that, under the terms of the Agreement, "any 'Arising IP' . . . could only be used by Unilever 'for the performance of the Services [outlined in the Agreement].'"  (SAC ¶ 14). However, the Agreement does not state that *Unilever* may only use any Arising IP in performance of the Agreement. Rather, the Agreement specifically states "*The Company*" may only use any Arising IP in performance of the Agreement (Agreement § 6.1) and specifically defines "Company" as ESG.  (Agreement at "Contract Details Sheet" and "Signature Block").  Moreover, under the terms of the Agreement, any Arising IP belonged to Unilever. (Agreement § 6.1).  Accordingly, the Agreement did not limit Unilever's ability to use any Arising IP.  Indeed, in opposition to Unilever's Motion to Dismiss, ESG now disclaims its allegations that Unilever misappropriated it's Arising IP, instead stating that it is only "alleging that Unilever has misappropriated Background IP, not Arising IP, as those terms are defined in the Agreement."  (Pl. Opp'n 9 n.2).

contract is ambiguous, its construction presents a question of fact, which . . . precludes summary dismissal" on a Rule 12(b)(6) motion. *Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 349 (S.D.N.Y. 2013) (citation omitted); *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissable on the pleadings."). In other words, while a court is not "obliged to accept the allegations of the complaint as to how to construe" a contract, it "should resolve any contractual ambiguities in favor of the plaintiff" on a motion to dismiss. *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). A contract is ambiguous if it is reasonably susceptible to more than one meaning. *Chimart Assoc. v. Paul*, 66 N.Y.2d 570, 573, 498 N.Y.S.2d 344, 346, 489 N.E.2d 231 (N.Y. 1986) (to determine if ambiguity exists in a contract, the court must determine "whether the agreement on its face is reasonably susceptible of more than one interpretation"); *Angelino v. Freedus*, 69 A.D.3d 1203, 1206, 893 N.Y.S.2d 668, 671 (3d Dep't 2010) ("A contract is ambiguous if the language used lacks a definite and precise meaning, and there is a reasonable basis for a difference of opinion.").

Unilever takes the position that, even if information with respect to ESG's configuration of the Ecopod kiosk to dispense Unilever's products constituted "Confidential Information" under the Agreement, Unilever was free to use that information outside the confines of the Agreement because it owned this information under the terms of the Agreement. (Def. Reply 8–9). However, resolving contractual ambiguities in favor of the plaintiff, as the Court must on a motion to dismiss, the Agreement could also reasonably be interpreted to mean that, even though Unilever owned any Arising IP, to the extent that IP constituted "Confidential Information," Unilever could only use that information in fulfillment of the Agreement. (*See* Agreement

10

§ 7.2).  Accordingly, because the Agreement is reasonably susceptible to more than one meaning with respect to the use of any Confidential Information developed during the course of the execution of the Agreement, one interpretation of which plausibly supports a claim for breach of contract, dismissal of the SAC is inappropriate at the pleadings stage.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss [ECF No. 37] is DENIED.

The Clerk of Court is respectfully requested to terminate docket entry 37.


**SO ORDERED.**

**Date:   August 25, 2022**
**          New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

11